# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PATIENCE L. CLAYTON, | ) |
| Plaintiff, | ) |
| v. | ) Case No. CIV-12-511-SPS |
| CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,[1] | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Patience L. Clayton requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is REVERSED and REMANDED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

---

[1] On February 14, 2013, Carolyn Colvin became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Colvin is substituted for Michael J. Astrue as the Defendant in this action.

Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on December 20, 1974, and was thirty-six years old at the time of the administrative hearing (Tr. 201). She has an eleventh grade education and past relevant work as a certified nurse's aide, child monitor, and power screwdriver operator (Tr. 27). The claimant alleges that she has been unable to work since July 29, 2009 because of neck pain, headaches, anxiety disorder, hiatal hernia, degenerative disc disease, and post-traumatic stress disorder (PTSD) (Tr. 246).

## Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security insurance payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on July 29, 2009 (Tr. 17). The Commissioner denied her applications. Following an administrative hearing, ALJ Michael A. Kirkpatrick found that the claimant was not disabled in a written opinion dated May 23, 2011. (Tr. 17-29). The claimant appealed the determination that she was

not disabled, but the Appeals Council denied review. Thus, the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the ability to perform sedentary work, *i. e.*, that claimant could lift and carry up to 10 pounds occasionally or 5 pounds frequently, sit for up to six hours and stand or walk for up to two hours with normal breaks, but found that the claimant was limited to simple, routine, unskilled tasks requiring no interaction with the general public due to mental limitations (Tr. 22). The ALJ concluded that although claimant is unable to perform her past relevant work, there is work in the national economy that claimant is capable of performing, *i. e.*, inspector, assembler, and hand worker (Tr. 28). Thus, the ALJ found that the claimant was not disabled (Tr. 29).

## Review

The claimant contends that the ALJ erred in the following ways: 1) failing to find additional severe impairments at step two; 2) failing to properly evaluate, consider, and weigh the medical evidence; 3) failing to present a proper hypothetical to the vocational expert at the hearing; and 4) failing to properly analyze her credibility. The Court finds that the ALJ failed to properly analyze the medical evidence of record, and as such, the Commissioner's decision is reversed and remanded.

State examining physician Dr. Patricia J. Walz, Ph.D. performed a Mental

Diagnostic Evaluation of the claimant on November 10, 2009 (Tr. 610). During the interview, the claimant related that she has anxiety attacks that prevent her from being around people, feels depressed, and experiences panic attacks and paranoid thinking (Tr. 610-11). The claimant reported that she had seen a counselor on a couple of occasions but could not continue because she had no transportation (Tr. 611). The claimant told Dr. Walz that she had been molested as a child, which caused relationship problems and ongoing nightmares (Tr. 611). The claimant described her health as "not good at all" and related that she experiences weakness on her left side and aches and pains all the time (Tr. 612). After employing several diagnostic techniques, Dr. Walz concluded that the claimant's diagnoses included bipolar II disorder, mixed, chronic PTSD, and panic disorder with agoraphobia (Tr. 614). Dr. Walz also recommended an intellectual assessment and assessed her GAF to be from 45-50 (Tr. 614-50).

State reviewing physician Dr. Phillip Massad, Ph.D. completed a Psychiatric Review Technique (PRT) on January 22, 2010 in which he found that the claimant's mental impairments fell under both affective disorders and anxiety-related disorders (Tr. 630). As a result, Dr. Massad found that the claimant had mild limitations in activities of daily living and moderate limitations in both social functioning and maintaining concentration, persistence, or pace (Tr. 640). Dr. Massad also completed a Mental Residual Functional Capacity Assessment in which he found that the claimant was markedly limited in the ability to understand and remember detailed instructions, ability

to carry out detailed instructions, and the ability to interact appropriately with the general public (Tr. 645).

On December 19, 2009, state examining physician Dr. Ashley Gourd, M.D. performed a physical examination of the claimant in which she found that the claimant's range of motion in her joints, hands, wrists, and spine were all normal (Tr. 626-28). Dr. Gourd's written notes indicate that the claimant's complaints of both left-sided weakness and chronic neck pain were unsubstantiated during her physical examination, and Dr. Gourd questioned "whether secondary gain is the motivating factor in [the claimant's] multiple persistent medical complaints" (Tr. 624).

The claimant began receiving treatment from Dr. William A. Willis of the Family Medical Clinic in March 2010. In April 2010, Dr. Willis noted that the claimant had a positive ANA, and he planned to redraw an ANA diagnostic cascade in order to more accurately determine a diagnosis. Dr. Willis, however, suspected that the claimant was suffering from "a mixed connective tissue disorder such as lupus" or fibromyalgia (Tr. 668). In September 2010, Dr. Willis noted that the claimant had been suffering from numbness in her left hand along with joint swelling (Tr. 679). Dr. Willis completed a Physical Residual Functional Capacity Evaluation on June 20, 2011 in which he opined that the claimant could sit for four hours (45 minutes at a time) in an eight-hour workday, stand for one hour (30 minutes at a time) in an eight-hour workday, and walk for two hours (30 minutes at a time) in an eight-hour workday (Tr. 731). Dr. Willis also opined that the claimant could frequently and continuously lift up to five pounds, and

occasionally lift up to 25 pounds (Tr. 731), occasionally push, pull, and reach, rarely work in an extended position and work above shoulder level, and never work overhead (Tr. 732). Finally, Dr. Willis included the following opinions in his medical statement: i) claimant could only occasionally grasp, finger, or perform fine manipulation with her hands; ii) claimant could only occasionally bend, stoop, kneel, and climb stairs; iii) claimant could rarely squat, crawl, crouch, balance, and climb ramps; iv) claimant could never climb ladders or scaffolds; v) claimant should completely avoid unprotected heights, dangerous moving machinery, handling vibrating tools, exposure to respiratory irritants, and driving/riding in automotive equipment; and vi) claimant had marked limitations in her ability to be exposed to extremes and sudden or frequent changes in temperature and/or humidity and limitations on fine visual acuity (Tr. 733).

The claimant's contention that the ALJ failed to properly evaluate all the medical evidence is based, in part, upon evidence submitted to the Appeals Council after the hearing. The Appeals Council must consider such additional evidence if it is: (i) new, (ii) material, and (iii) "related to the period on or before the date of the ALJ's decision." *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004), *quoting Box v. Shalala*, 52 F.3d 168, 171 (8th Cir. 1995). The parties do not address whether the evidence submitted by the claimant after the administrative hearing qualifies as new, material and chronologically relevant, but the Appeals Council considered it, and the Court therefore has no difficulty concluding that it does qualify.

First, evidence is new if it "is not duplicative or cumulative." *Threet v. Barnhart*,

353 F.3d 1185, 1191 (10th Cir. 2003), *quoting Wilkins v. Sec'y, Dep't of Health & Human Svcs.*, 953 F.2d 93, 96 (4th Cir. 1991). The evidence submitted by the claimant to the Appeals Council clearly was new evidence. The Physical Residual Functional Capacity Evaluation was neither duplicative nor cumulative because it was not presented to the ALJ prior to his decision. Second, evidence is material "if there is a reasonable possibility that [it] would have changed the outcome." *Threet*, 353 F.3d at 1191, *quoting Wilkins v. Sec'y, Dep't of Health & Human Svcs.*, 953 F.2d 93, 96 (4th Cir. 1991). In other words, the evidence must "reasonably [call] into question the disposition of the case." *Id.*; *see also, Lawson v. Ch*ater, 1996 WL 195124, at *2 (10th Cir. April 23, 1996). In this regard, the physical evaluation performed by Dr. Willis is the only treating physician opinion in the record. Finally, the evidence is chronologically relevant when it pertains to the time "period on or before the date of the ALJ's Decision." *Kesner v. Barnhart*, 470 F. Supp. 2d 1315, 1320 (D. Utah 2006), *citing* 20 C.F.R. § 404.970(b). Although Dr. Willis' evaluation occurred subsequent to the ALJ's decision, Dr. Willis began examining the claimant in March 2010, *and* the evaluation was based in part on a review of the claimant's medical history (Tr. 733).

Since the evidence presented by the claimant after the administrative hearing *does* qualify as new and material evidence under C.F.R. §§ 404.970(b) and 416.1470(b) and the Appeals Council considered it, such evidence "becomes part of the record we assess in evaluating the Commissioner's denial of benefits under the substantial-evidence standard." *Chambers*, 389 F.3d at 1142, *citing O'Dell v. Shalala*, 44 F.3d 855, 859 (10th

Cir. 1994). In light of this new evidence, the Court finds that the ALJ's decision is not supported by substantial evidence.

The ALJ's written decision denying benefits does not address the physical evaluation completed by Dr. Willis. Considering that Dr. Willis's opinion is the only treating physician opinion of record, the evidence is certainly probative of the claimant's physical limitations. Medical opinions from the claimant's treating physician are entitled to controlling weight if they are "'well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record.'" *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). Even if a treating physician's opinions are not entitled to controlling weight, the ALJ must nevertheless determine the proper weight to give them by analyzing the factors set forth in 20 C.F.R. § 404.1527. *Id.* at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§] 404.1527.'"), *quoting Watkins*, 350 F.3d at 1300. The pertinent factors are: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other

factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-01 [quotation marks omitted], *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). Finally, if the ALJ decides to reject a treating physician's opinion entirely, "he must . . . give specific, legitimate reasons for doing so[,]" *id.* at 1301 [quotation marks omitted; citation omitted], so it is "clear to any subsequent reviewers the weight [he] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300 [quotation omitted]. As a result, the ALJ is required to analyze Dr. Willis's opinion in accordance with the treating physician rule as set forth in 20 C.F.R. §§ 404.1527; 416.927. The ALJ had no opportunity to perform this analysis, and while the Appeals Council considered the new evidence, they failed to analyze it in accordance with the aforementioned standards. The decision of the Commissioner must therefore be reversed and the case remanded to the ALJ for further proceedings.

Accordingly, the decision of the Commissioner is reversed and the case remanded to the ALJ for a proper analysis of Dr. Willis's opinion. On remand, the ALJ should reconsider the opinion in accordance with the appropriate standards and determine what impact, if any, such reconsideration has on the claimant's ability to work.

### Conclusion

The Court finds that correct legal standards were not applied by the ALJ and that the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the ruling of the Commissioner of the Social Security Administration is

REVERSED and the case REMANDED for further proceedings not inconsistent herewith.

**DATED** this 24th day of March, 2014.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma